UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN
_____

JANE DOE,                                               Case No. 1:18-cv-00988
                                                        Honorable
          Plaintiff,

v

CASCADE CHARTER TOWNSHIP;
BOY SCOUTS OF AMERICA;                    **COMPLAINT AND**
MICHIGAN CROSSROADS COUNCIL, INC.,        **JURY DEMAND**
BOY SCOUTS OF AMERICA; AND
LEARNING FOR LIFE,

          Defendants.

_____

William M. Azkoul (P40071)
Thomas R. Behm (P40073)
Laura B. Danielson (P77789)
Gruel Mills Nims & Pylman PLLC
Attorneys for Plaintiff
99 Monroe Ave NW, Suite 800
Grand Rapids, MI 49503
(616) 235-5500

_____


# PLAINTIFF'S COMPLAINT AND JURY DEMAND

THERE IS NO OTHER CIVIL ACTION BETWEEN THESE PARTIES ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT PENDING IN THIS COURT, NOR HAS ANY SUCH ACTION BEEN PREVIOUSLY FILED AND DISMISSED OR TRANSFERRED AFTER HAVING BEEN ASSIGNED TO A JUDGE.

NOW COMES Plaintiff, Jane Doe,[1] by and through her attorneys, Gruel Mills Nims & Pylman, PLLC, and hereby alleges and states as follows:

## INTRODUCTION

1.      Plaintiff Jane Doe seeks monetary relief for devastating injuries sustained as a result of the acts, conduct, and omissions of Defendants and their respective employees, representatives, and agents, relating to the sexual assault, abuse, molestation, and harassment she experienced during the time that she was participating in a Boy Scouts of America career exploration program administered through Learning for Life and the Michigan Crossroads Council of BSA in partnership with the Cascade Charter Township Fire Department.

2.      As a direct result of the acts, omissions, and conduct of Defendants, two firefighters employed by Cascade Charter Township, Clem Bell and Steven Drake, were able to separately and independently employ similar, well-recognized grooming techniques and abuse the trust and power inherent in their positions to accomplish the sexual assault, abuse, molestation, and harassment of Jane.

3.      This action arises from Defendants' blatant disregard for Plaintiff's constitutionally-protected rights and Defendants' negligence, deliberate indifference, and unreasonable response to complaints of sexual assault and/or suspected sexual assault. Jane was repeatedly sexually assaulted, abused, and molested as a direct result of the Defendants' failures to:

   a. Have in place, observe, and/or enforce adequate policies to protect youth participants in the Exploring program from the known risk of sexual abuse, harassment, and molestation;

---

[1] Contemporaneously with this filing, Plaintiff is seeking a court order to proceed anonymously, as she was a minor at all times relevant to her Complaint and her claims involve sexual abuse and other conduct considered to be extremely personal and sensitive in nature.

    b.    Adequately select, supervise, train, and discipline their employees, volunteers, and agents in a manner which would protect youth participants in the Exploring program from sexual abuse, harassment, and molestation; and

    c.    Investigate, report, and take appropriate action in response to reports of sexual abuse or suspected sexual abuse to protect youth participants in the Exploring program from sexual abuse, harassment, and molestation.

4.    Ultimately, the acts, conduct, and omissions of the Defendants severely compromised the safety and health of Plaintiff and resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiff which have been devastating for Plaintiff and her family.

**JURISDICTION AND VENUE**

5.    Plaintiff incorporates by reference herein Paragraphs 1-4 above.

6.    Plaintiff Jane Doe is an adult female and is a citizen of Michigan. At all times relevant to this Complaint, she was a minor.

7.    Defendant Cascade Charter Township is a duly organized municipal corporation engaged in governmental activities in Kent County, Michigan.

8.    Defendant Boy Scouts of America is a Texas corporation with its principal place of business in Texas.

9.    Defendant Learning for Life is a Washington District of Columbia nonprofit corporation with its principal place of business in Texas.

10.    Defendant Michigan Crossroads Council, Inc. Boy Scouts of America is a domestic nonprofit corporation incorporated in the State of Michigan with its principal place of business in Michigan.

11.    This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Plaintiff seeks redress of the deprivation of her rights

secured by the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

12. This Court possesses supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as such claims arise from the same controversy that gives rise to the federal claims for which this Court has original jurisdiction.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claim occurred in Cascade Charter Township, Kent County, Michigan.

## FACTS

### THE EXPLORING PROGRAM

14. Plaintiff incorporates by reference herein Paragraphs 1-13 above.

15. Exploring is a career education program which places 10 to 20 year-old boys and girls at a "club" or "post," which is an existing local business, organization, or government entity in the student's desired career field.

16. At all times relevant to this Complaint, Defendant Boy Scouts of America, through its affiliate and/or subsidiary, Defendant Learning for Life, operated the Exploring program.

17. At all times relevant to this Complaint, Defendant Michigan Crossroads Council, Inc. of the Boy Scouts of America administered various Exploring posts in Michigan.

18. For purposes of this Complaint, Defendants Boy Scouts of America, Learning for Life, and the Michigan Crossroads Council of Boy Scouts of America, along with all of the employees, volunteers, and agents of those entities, will hereinafter be referred to as BSA, as each of these affiliated entities was involved in creating, sponsoring, administering, promulgating, and/or overseeing the Exploring program.

4

19.     Within the Exploring program, Learning for Life and/or the local council had the responsibility to, *inter alia*, provide support and services to each post, including leadership training, guidance in organizing and running the program, regular communication with the post, planning of council-wide activities, providing resources and facilities, and ensuring that the adult leaders of each post were properly trained and complied with BSA policies.

20.     The Exploring program requires certain adult leaders, including one committee chair, two committee members, one Advisor, and any number of associate Advisors, at each post to supervise the Explorers. These leaders must apply to participate, pass a background check, and complete Youth Protection Training at least every two years.

21.     Adult leaders of an Exploring post have the responsibility to plan a program of activities in which Explorers learn about and participate in hands-on activities in their desired career field.

22.     Adult leaders of an Exploring post are expected to "genuinely care about the well-being of Explorers and to do what is in the best interest of those Explorers. They are expected to be ethical people in their professional and personal lives as well as in relationship to Explorers."

23.     Adult leaders have the responsibility to "uphold[] the standards and policies of the participating organization and Learning for Life," "protect[] the young people in the Explorer post or club from abuse and neglect," and "uphold[] the standards of Learning for Life's Youth Protection emphasis."

24.     Learning for Life's Youth Protection Guidelines include commitments to:

   a.    Educate Learning for Life and Exploring professionals, volunteers, parents, and youth members to aid in the prevention and detection of all forms of child abuse;

   b.    Strengthen participating organizations' leader selection procedures to help defend against suspected or alleged abusers entering the Learning for Life leadership ranks;

    c.   Strengthen and enforce policies that create barriers to child abuse within the Learning for Life and Exploring programs;

    d.   Encourage the immediate reporting of improper behavior or violations of Learning for Life Policy;

    e.   Identify and swiftly remove suspected or alleged offenders; and

    f.   Provide support and resources to youth, families, programs, and councils as needed.

**THE CASCADE CHARTER TOWNSHIP FIRE DEPARTMENT POST**

25.    At all times relevant to this Complaint, the Cascade Charter Township Fire Department was an Exploring post administered through the Michigan Crossroads Council.

26.    At all times relevant to the Complaint, Cascade Charter Township employed Fire Chief John Sigg, Deputy Fire Chief John Shipley, and Lieutenants Todd Stevenson and Ron Rowland.

27.    In 2016, the adults registered with BSA to lead the Exploring program at the Cascade Charter Township Fire Department included Jan Fair, Matt Groesser, John Makuch, John Porter, John Shipley, and Mary Shipley.

28.    In 2015 and early 2016, Chief Sigg, Deputy Chief Shipley, Lieutenant Ron Rowland, and Matt Groesser, the Explorer Post committee chairman, began discussing how to update the Post's policies and procedures for the Explorer program and how to adopt a new process to select Explorers.

29.    In March and April 2016, Matt Groesser corresponded with BSA regarding "questions pertaining to responding to incidents with the intent of syncing up the rules from the national office with the Explorer post policies and procedures document." These correspondences were forwarded to Chief Sigg for his review.

30.     At no point in 2016 were the policies and procedures of the Cascade Charter Township Fire Department Post changed, updated, or modified.

31.     Upon information and belief, the Michigan Crossroads Council had no contact with or oversight of the Cascade Charter Township post in 2016.

**JANE DOE'S INVOLVEMENT IN EXPLORING**

32.     In April 2016, Jane Doe completed a "Youth Participant Application" on a form created by BSA to participate in the Exploring program at the Cascade Charter Township Fire Department.

33.     In May 2016, Jane was accepted to participate in the Exploring Program at the Cascade Charter Township Fire Department. Her application form was signed by John Shipley on May 10, 2016.

34.     Jane was 16 years old at the time she began participating in the Exploring program.

35.     Jane hoped to become a firefighter in Cascade Charter Township through the training and networking opportunities she would receive in the Exploring program.

36.     Neither Jane nor her parents were made aware of the identities of the Exploring program's registered leaders.

37.     Jane never met the sole registered female leader, Mary Shipley.

38.     The Cascade Fire Department did not require through policy, practice, or custom that the registered leaders of its Exploring Post be present at the firehouse when Explorers were present.

39.     The registered leaders of the Cascade Fire Department Exploring Post were rarely, if ever, involved in supervising or facilitating the education of the Explorers and did not design a structured program of activities for the Exploring students in 2016. Rather, Cascade Township

allowed any firefighter to supervise and train the Exploring students in an informal and unplanned fashion.

40.     BSA requires that registered and trained adults oversee students while they are Exploring. Learning for Life's Youth Protection Guidelines state that adult leaders or volunteers "need to have a basic knowledge about the abuse of adolescents and the youth protection policies of Learning for Life. . . . all adult leaders are obligated to be familiar with the Youth Protection Guidelines of Learning for Life." This policy was not enforced by any BSA entity or Cascade Charter Township.

41.     Jane's participation in the Exploring program included spending significant time with the firefighters while they were working, responding to calls to observe the firefighters and EMTs, and participating in trainings. She was unsupervised and had no curriculum or structure.

42.     In the summer of 2016, Jane spent about 30 hours a week at the firehouse, generally staying until 9:00 or 10:00 p.m. five days a week. Jane also participated in fire department trainings every other week, which could run until 11:00 p.m.

43.     The Cascade Fire Department had policies prohibiting Explorers from spending more than two hours a day at the Fire Department without prior approval and prohibiting Explorers from being at the firehouse after 8:00 p.m., with exceptions for trainings and active incidents. These policies were not enforced.

44.     Jane was regularly the only Explorer and the only female in the firehouse throughout her time as an Explorer.

45.     The Cascade Fire Department did not through policy, practice, or custom require that a female leader be present at the firehouse while female Explorers were participating.

8

**Jane Doe is Groomed for Participation in Sexual Abuse, Harassment, and Molestation**

46.     At all times relevant to this Complaint, Cascade Charter Township employed then-51-year-old Clem Bell and then-32-year-old Steven Drake as paid-on-call firefighters.

47.     Soon after Jane started participating in the Exploring program at the Cascade Fire Department Post, Bell and Drake individually began to pay special attention to her. While most of the firefighters were disinterested in the Explorer students, Bell and Drake each sought out Jane and eagerly taught her the techniques and skills to be a firefighter, answered her questions, and befriended her.

48.     Neither Clem Bell nor Steven Drake were registered leaders for the Exploring program, and neither had completed Youth Protection Training as required by BSA.

49.     When Jane was at the firehouse, Drake and Bell individually spent considerable time with her, showering her with flattering attention and confiding in her about their personal lives.

50.     During this time, both men obtained Jane's contact information and connected with her on various social media platforms.

51.      Both Drake and Bell pursued social relationships with Jane outside of her time as an Explorer.

52.     At all relevant times, Drake and Bell were both married men with children, and are 16 and 35 years older than Jane, respectively. Bell's children went to school with Jane.

53.     Drake urged Jane to work for his struggling landscape business, and Bell coerced Jane to be his campaign manager as he ran for a full term as Cascade Charter Township Clerk.

54.     Jane admired Drake and Bell and saw them as authority figures she had to listen to, respect, and obey.

55.     The Cascade Fire Department did not through policy, practice, or custom prohibit its firefighters from fraternizing with the Exploring students outside of the students' time in the program at the firehouse.

56.     BSA prohibits adults from fraternizing with Explorers outside of the program. Learning for Life's Youth Protection Guidelines state: "It has been found that maintaining a close social relationship, such as dating, between adult leaders and participants is disruptive to the program, and therefore is not permitted by Learning for Life." This policy was not enforced by any BSA entity or Cascade Charter Township.

57.     Drake and Bell each individually frequently isolated Jane from other firefighters and spent time with her alone in various areas of the firehouse and the adjoining township offices while she was present at the firehouse to participate in the Exploring program.

58.     Cascade Charter Township had no policy, custom, or practice of prohibiting a male firefighter from being alone with a female Exploring student at the firehouse.

59.     BSA policy prohibits one-on-one contact between an Explorer and an adult leader. Learning for Life's Youth Protection Guidelines state: "One-on-one contact between adults and participants is not permitted, except for authorized ride-along programs in Exploring. Personal conferences must be conducted in plain view of others." This policy was not enforced by any BSA entity or Cascade Township.

60.     Both Drake and Bell frequently drove Jane, alone, in township vehicles to other locations, such as to county parks that needed to be locked up at the end of the evening.

61.     Cascade Charter Township had no policy, custom, or practice of prohibiting a male firefighter from driving a sole female Exploring student to other locations.

62.     BSA requires "two-deep leadership" on all trips and outings. Learning for Life's Youth Protection Guidelines state: "Two Learning for Life adult leaders or one Learning for Life leader and a parent—both of whom are 21 years of age or older—are required on all trips and outings. . . . If you cannot provide two adults for each vehicle, the minimum required is one adult and two or more youth participants—never one on one." These policies were not enforced by any BSA entity or Cascade Township.

63.     BSA requires that adult leaders of both sexes accompany any coeducational activity. Learning for Life's Youth Protection Guidelines state: "If the activity is coeducational, leaders of both sexes must be present." This policy was not enforced by any BSA entity or Cascade Township.

OTHERS NOTICE THE GROOMING PROCESS

64.     On June 13, 2016, firefighter Andrew Marsman approached Deputy Fire Chief John Shipley and complained that Bell was showing inappropriate affection and attention to Jane, which led the other firefighters to develop "bad perceptions."

65.     In response to Marsman's complaint, Deputy Chief Shipley informed Bell that others in the fire department were concerned about what appeared to be an inappropriate relationship between him and Jane. Bell was defensive and denied any such relationship, stating that he was merely trying to make Jane "feel valuable" and "get quality training." Shipley warned Bell to maintain space between himself and Jane and not to make bad decisions. No other actions were taken at that time to guard against the suspected inappropriate relationship, and the concerns were not reported to Jane's parents, any BSA entity, or law enforcement.

66.     Cascade Township had no policy, custom, or practice regarding reporting suspected abuse or appropriate actions to protect the youth participants in the Explorer program from sexual abuse.

67.     BSA requires that upon notice of any signs of suspected sexual harassment, adults must take immediate steps to stop it and must immediately contact their Learning for Life executive. Learning for Life's policies, as reported in Chapter Five of its handbook, state:

> "It is important to remember that any time abuse is suspected in the Exploring program, the Scout executive must be contacted immediately. The Scout executive in every council has established contacts with law enforcement and child protective agencies within the council and knows the proper procedures to follow to ensure that the young victim will be protected from any possible further abuse."

This policy was not enforced by any BSA entity or Cascade Township.

68.     As a direct result of the nonexistent and/or unenforced policies described above, beginning in July 2016 and lasting through December 2016, Drake and Bell separately used their positions of trust and authority accorded to them by Cascade Township and the access granted by the Exploring program to emotionally manipulate Jane into participation in escalating sexual activity, using well-recognized grooming tactics such as special attention, affection, compliments, gifts, isolation, secrecy, blame, and threats to control her emotions and actions.

69.     Jane was particularly vulnerable to the grooming in which Drake and Bell engaged because of mild cognitive difficulties caused by a concussion she sustained at a young age, a chronic health condition from which she suffers, deep-seated respect for authority figures, and her naivety. Jane had virtually no capacity to resist the advances proposed by Drake and Bell.

70.     On or about July 2 or 3, 2016, Drake initiated a vulgar and indecent sexual conversation with Jane while the two were alone in the fire garage during work hours. Over the following week, he escalated the frequency and intensity of sexual conversations with Jane.

71.     On or about July 8 or 9, Drake engaged in sexual abuse, harassment, and nonconsensual forced touching while he and Jane were alone in a concealed area of the firehouse during a work shift for approximately 45 minutes.

72.     Also in July 2016, Bell began initiating inappropriate sexual conversations with Jane at the firehouse after directing Jane to areas where they would be alone.

73.     In late July 2016, Drake engaged in sexual abuse of Jane after he drove her to another location in a township vehicle during a work shift, purportedly to lock up a county park.

74.     In mid-August 2016, Bell engaged in sexual abuse, harassment, and nonconsensual forced touching while he and Jane were alone in his township clerk office, connected and adjacent to the fire house, during a work shift.

75.     In late August 2016, Bell engaged in sexual abuse of Jane after taking her, alone, in a township vehicle to a township park to close the park at dusk.

76.     In the next months, Bell and Drake routinely isolated Jane from the other firefighters during their work shifts in order to sexually abuse, harass, and molest her. In particular, whenever Bell arrived at work, Jane knew that she would have to go with Bell to an isolated area of the firehouse or an emergency vehicle.

77.     Bell became extremely controlling of Jane's actions and formulated a sick fantasy life in which he and Jane were married. Bell urged Jane to use his last name, researched the legal age of consent in various states and countries, and planned to leave his wife and move to a different state or country with Jane to start a new life together. Bell forbade Jane from seeing other boys, having male friends, or going to school dances. Many of these conversations occurred during work shifts at the firehouse.

78.     Bell made veiled threats and comments which made Jane believe that he had killed his ex-girlfriend and ex-wife and that he would kill her if she left him.

79.     Drake threatened that if Jane told anyone about their "relationship," she would be removed from the Exploring program and would be unable to pursue her desired career as a firefighter.

80.     Bell and Drake each sent vulgar and obscene nude photographs to Jane and demanded that Jane provide nude photographs of herself to them.

81.     Throughout September, October, November, and early December 2016, Drake and Bell separately abused, assaulted, harassed, battered, and/or molested Jane countless times in the above-described manner.

82.     Learning for Life's Youth Protection Guidelines recognize that "Any sexual activity between a child and an adult or between children when there is an unusual distribution of power, such as when one is significantly older or larger," is sexual abuse because "it involves the misuse of trust and power."

**CASCADE TOWNSHIP IS ON NOTICE OF THE ABUSE AND FAILS TO REPORT IT OR PREVENT FURTHER ABUSE**

83.     During the fall and winter of 2016, Cascade Township firefighters continued to notice Drake and Bell's concerning interactions with Jane, which led them to suspect or know that sexual abuse was occurring.

84.     On November 3, 2016, firefighter Lance Korhorn noticed that Bell and Jane could not be found during a work shift. He reported his observation to Lieutenant Stevenson. Stevenson and Korhorn later found Bell and Jane alone in a township office, behind a locked door. Korhorn and Stevenson had to force the door open.

14

85.     On November 4, 2016, Lieutenant Stevenson warned Bell that "it does not look good" when he is alone behind locked doors with Jane.

86.     On November 4, 2016, firefighter Korhorn reported his concerns about the way Bell was treating Jane to Fire Chief Sigg. Chief Sigg and Lieutenant Stevenson scheduled a meeting with Bell for nearly a week later, on November 10, 2016.

87.     The concerns about Bell's interactions with Jane were not reported to Jane's parents, any BSA organization, or law enforcement.

88.     Jane was never asked about her relationships with Bell and Drake.

89.     Cascade Charter Township had no policy, custom, or practice of requiring its employees to report concerns that an Explorer was being abused to fire department leadership, law enforcement, or the student's parents.

90.     BSA requires that "any suspected case of sexual misconduct in the Exploring program be reported to the council Scout executive immediately." This policy was not enforced by any BSA entity or Cascade Township.

91.     On November 10, 2016, Lieutenant Stevenson and Chief Sigg met with Bell to discuss their concerns about his interactions with Jane. They warned Bell that his actions gave the appearance of an inappropriate relationship with Jane and told him that he should not go into rooms or vehicles alone with Jane.  Bell promised not to be alone with Jane again.

92.     No measures were taken to limit Bell's access to Jane.

93.     Just two days later, on November 12, 2016, firefighter Marsman sent a text message to Lieutenant Stevenson expressing his concern that Bell continued to show Jane inappropriate attention, as Jane was following Bell around the station and wearing his coat.

15

94.     Lieutenant Stevenson called Bell on November 13, 2016, and told Bell that he needed to stay away from Jane because others were concerned about their relationship.

95.     Lieutenant Stevenson reported the concerns to Chief Sigg via email and asked Sigg to talk with Bell again. Chief Sigg did nothing in response.

96.     On November 17, 2016, Chief Sigg and Matt Groesser met to discuss "Explorer matters." At this meeting, Chief Sigg notified Matt Groesser of the perception that Bell was spending a concerning amount of time with Jane.

97.     Chief Sigg, Lieutenant Stevenson, and Matt Groesser planned to meet on November 21, 2016, to discuss the concerns about Bell's relationship with Jane. The meeting did not occur, but was postponed until December 7, 2016.

98.     On December 7, 2016, Chief Sigg, Lieutenant Stevenson, and Matt Groesser met to discuss their concerns about Bell's relationship with Jane and changing the Township's Explorer policies, procedures, and selection process. The men discussed the "uncomfortable feeling" that some department members had regarding Bell's interactions with Jane. Stevenson and Groesser decided to talk with Jane the next time she worked during the same shift as Lieutenant Stevenson, to "advise her that our expectation was that she not spend all her time with just one [firefighter]." The planned meeting with Jane never occurred.

99.     On December 13, 2016, Jane disclosed the abuse to her parents.

100.     On December 14, 2016, Jane sought psychological treatment at Pine Rest Christian Health Services.

101.     On December 14, 2016, at 11:22 a.m., without knowledge of Jane's condition, Chief Sigg sent an email to Matt Groesser and Lieutenant Stevenson, asking them to hold off talking with Jane because Deputy Chief Shipley planned to talk with Bell again.

102.     On December 14, 2016, at 1:38 p.m., Chief Sigg sent out an email to the firefighters indicating that Explorers could not be in the firehouse after 8 p.m. except for certain trainings, and that the Exploring guidelines and responses were being reviewed.

103.     On December 20, 2016, Matt Groesser spoke with Chief Sigg after the extent of Jane's heinous abuse had come to light. Groesser stated that he "understood [the] township needed to take some corrective actions" but hoped it would not close the Post.

104.     An investigation conducted by the Kent County Sheriff's Department confirmed that Drake and Bell had abused Jane in the manner described above.

105.     On May 1, 2017, Bell and Drake pled guilty to promoting child sexually abusive activity, possession of child sexually abusive material, and using a computer to commit a crime.

106.     Both Bell and Drake admitted in their plea hearings that they asked Jane to send them pornographic pictures of herself using their cell phones and/or computers.

107.     Cascade Charter Township conducted an internal investigation of the above events.

108.     Deputy Fire Chief Shipley was terminated and Fire Chief Sigg was forced to retire early because of the results of the Township's internal investigation.

109.     Cascade Township Manager Ben Swayze told the media that the abuse had occurred due to ***significant deficiencies in the policies and procedures of how the Explorer program was managed.***

110.     The Exploring Post at the Cascade Charter Township fire department was suspended as a result the above-described events.

111.     At least 137 girls and 26 boys have been raped, seduced, fondled, kissed, or otherwise exploited in 28 states by at least 129 law enforcement officers, firefighters, and other

advisors in the Explorer program in the 40 years preceding Jane's abuse. BSA was well aware of these prior incidents of abuse.

## COUNT I

### VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 AGAINST CASCADE CHARTER TOWNSHIP

112.    Plaintiff incorporates by reference herein paragraphs 1-111 above.

113.    Plaintiff, a minor female at all relevant times to this Complaint, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

114.    Plaintiff enjoys the constitutionally-protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment, under the Fourteenth Amendment to the United States Constitution.

115.    Plaintiff's Due Process right to bodily integrity is a recognized constitutional right and was clearly established at the time of the abuse.

116.    At all relevant times, Clem Bell, Steven Drake, John Shipley, John Sigg, and Todd Stevenson were acting within the scope of their employment and under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages governing the performance of their official duties.

117.    The acts as alleged above amount to an intentional and/or reckless violation of clearly established constitutionally protected rights, of which reasonable persons in the Defendants' position should have known.

118.    Cascade Township has the ultimate responsibility and authority to adequately train and supervise its employees, agents, and representatives in the appropriate manner of detecting,

18

reporting, and preventing sexual abuse, harassment, assault, and molestation. As a matter of acts, custom, policy, and/or practice, Cascade Township failed to do so with deliberate indifference.

119.     Cascade Township has the ultimate responsibility and authority to investigate complaints against its employees, agents, and representatives from all individuals regarding the sexual abuse, harassment, assault, and molestation of minors, and failed to do so with deliberate indifference.

120.     Cascade Township has the ultimate responsibility and authority to prevent sexual assault, harassment, abuse, and molestation on its premises and encourage the prompt disclosure of any such abuse or suspected abuse through the implementation of reasonable policies and procedures.

121.     Cascade Township exhibited deliberate indifference to Jane's constitutional rights by violating the policies and procedures set forth in its own Explorer Post Manual and Guidelines, including but not limited to:

     a.  Providing a safe, inspirational, and constructive atmosphere for young people, 1.1.0.

     b.  Providing each Explorer with a copy of the Policies and Procedures Manual, 3.0.0.

     c.  Making available to Explorers a roster identifying and containing contact information for the Explorer advisors, 6.5.0.

     d.  Requiring the post supervisor to oversee all aspects of the post, 9.6.0.

     e.  Providing a safe learning experience, 10.3.0.

     f.  Prohibiting Explorer visits or stays at the station longer than two hours without prior approval. 12.1.0.

     g.  Prohibiting Explorers from being at the station after 8 p.m. unless participating in a training or active incident, 12.1.1.

122.    Cascade Township exhibited deliberate indifference to Jane's constitutional rights by failing to have policies in place to protect her from a violation of her right to bodily integrity, including but not limited to:

a.   Establishing appropriate measures regarding selection and training of firefighters to work with Explorer students;

b.   Establishing an appropriate schedule and record of hours served for Explorer students;

c.   Establishing appropriate monitoring/supervision of Explorer students while they were present at the firehouse;

d.   Requiring Exploring leaders to create a structured program of activities for Explorer students;

e.   Establishing appropriate monitoring and supervision of firefighters while they are interacting with Explorer students;

f.   Prohibiting firefighter fraternization with Explorer students;

g.   Prohibiting firefighters from being alone with Explorer students at the firehouse, on calls, or on other excursions, including prohibiting any "ride-alongs" with only one Explorer;

h.   Prohibiting adults from being alone with Explorer students of the opposite sex at any time;

i.   Requiring that a female leader be present when female Explorer students are participating;

j.   Educating Explorers, adult leaders, and other firefighters regarding the parameters of appropriate behavior and interaction, what constitutes sexual harassment or abuse, and how to recognize the warning signs of harassment or abuse, including grooming techniques;

k.   Requiring that complaints of possible sexual harassment or abuse of Explorer students be reported to parents, law enforcement, and the Boy Scouts of America through Learning for Life;

l.   Requiring an appropriate investigation of complaints of suspected or known sexual harassment or abuse of an Explorer student;

      m. Requiring that a firefighter who is suspected to have engaged in sexual harassment or abuse be separated from the victim of the suspected harassment or abuse; and

      n. Requiring escalating discipline for firefighters after repeated complaints of suspected sexual harassment or abuse of an Explorer student and disregard for verbal warnings.

123.    Cascade Township exhibited deliberate indifference to Jane's constitutional rights by failing to adopt, observe, implement, and enforce the policies of Learning for Life and Boy Scouts of America, including but not limited to:

      a. Requiring that adult leaders be registered, undergo a background check, and complete Youth Protection Training every two years;

      b. Prohibiting adults who were not registered or trained from being the sole supervisors of Explorer students;

      c. Requiring adult leaders to establish and supervise a structured Exploring program;

      d. Prohibiting adults from fraternizing with Explorer students;

      e. Requiring both male and female leaders for co-ed activities;

      f. Requiring at least two-deep leadership, including at least one leader who has completed Youth Protection Training, at all times, and prohibiting adults from spending one-on-one alone time with an Explorer; and

      g. Requiring that when sexual abuse is suspected, immediate steps be taken to stop it and that the suspected abuse be reported to the local Learning for Life executive.

124.    Cascade Township's deliberately indifferent failure to follow, enforce, or implement reasonable policies directly led to Jane being victimized for approximately six months by two different firefighters, despite repeated concerns from others who observed obvious evidence that inappropriate relationships had formed.

125.    Cascade Township's authorized representative has publicly admitted that Jane's abuse occurred because of significant deficiencies in the policies and procedures of how the Explorer program was managed.

126.    As a direct and proximate result of Cascade Charter Township's actions and omissions, Jane's constitutional rights were violated and she has suffered and will continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically-manifested injuries, including anxiety, depression, sleep disorders, and nightmares, physiological injuries, and physical injuries. Jane has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, will sustain a loss of earnings and earning capacity in the future, and has and will continue to incur ongoing medical expenses to obtain required treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

127.    Pursuant to 42 U.S.C. § 1988, Plaintiff requests reasonable attorney fees, expert fees, and costs to be awarded to her.

### COUNT II

### GROSS NEGLIGENCE BY BSA

128.    Plaintiff incorporates by reference herein, paragraphs 1-127 above.

129.    Defendants Boy Scouts of America, Learning for Life, and the Crossroads Council of Boy Scouts of America, along with their employees, representatives, and agents, hereinafter collectively referred to as "BSA," owed Plaintiff the duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while she participated in the Exploring program.

130.    By accepting Jane to participate in its youth educational program, BSA established a special relationship with Jane, resulting in BSA owing Jane a duty to use due care for her safety and protection.

131.    Jane relied on BSA to use reasonable care and skill to prevent harm to her during her participation in its Exploring program.

132.    BSA's failure to adequately oversee its Exploring program and enforce its own policies and procedures was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Jane.

133.    Despite the known extensive history of sexual abuse which has taken place in its Exploring program, BSA not only continued to accept students to participate in the program but also failed to adequately supervise or oversee its various posts, including the Cascade Township Post. BSA's conduct demonstrated a willful disregard for substantial risks to Jane.

134.    BSA's acts and omissions, as described above, demonstrated a willful disregard for necessary precautions to reasonably protect Jane's safety in light of a known risk of sexual assault, abuse, and harassment.

135.    Defendant BSA breached the duties it owed to Jane and was grossly negligent by the actions described above, including but not limited to its failure to:

a.  Perform any meaningful oversight or supervision of the Cascade Charter Township Fire Department Post of its Exploring Program;

b.  Require and/or confirm that the adults directly involved with the Explorer students at the Cascade Fire Department Post were registered with BSA, had undergone a background check, and had completed Youth Protection Training;

c.  Require and/or confirm that the registered leaders of the Cascade Fire Department Post were overseeing the Exploring program;

d.  Require and/or confirm that the registered leaders of the Cascade Fire Department Post had completed Youth Protection Training every two years;

e.  Adequately train the Cascade Fire Department Post leadership as to the risks of child sexual abuse, harassment, and molestation inherent in its Exploring program;

f.  Adequately train the Cascade Fire Department Post leadership as to the signs that a child is, has been, or is at risk to be sexually abused, harassed, or molested;

g.  Adequately train the Cascade Fire Department Post leadership as to appropriate reporting and investigation when it is suspected that a child has been sexually abused, harassed, or molested or when there is an elevated risk of such abuse, harassment, or molestation;

h.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that requires two-deep leadership and prohibits one-on-one contact at all times;

i.  Enact a policy prohibiting "ride-alongs;"

j.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that requires both male and female leaders to oversee co-ed events;

k.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that prohibits adults from fraternization with Explorer students;

l.  Impose consequences on the Cascade Fire Department Post for its failure to comply with the BSA policies designed for the protection of the students involved in the Exploring program;

m.  Enact other policies that would protect Explorer students from the known risk of sexual abuse in the Exploring program;

n.  Require that the Cascade Fire Department Post have adequate policies in place to protect Explorer students from sexual harassment, abuse, or molestation;

o.  Require the Cascade Fire Department Post to adequately train its staff who are not registered leaders with the program regarding the prevention, reporting, and investigation of sexual assault, harassment, and molestation;

p.  Require the Cascade Fire Department Post to adequately train the Explorer students regarding the risk of sexual assault, harassment, and molestation and provide a safe way for students to report that they have been sexually assaulted, harassed, or molested;

q.  Adequately train and supervise its local councils and the employees and volunteers thereof regarding the required supervision of the Exploring Posts; and

r.  Make the Post aware of the egregious number of incidents and historically high risk of sexual abuse, harassment, and molestation in the Exploring program.

Said acts and omissions were committed with reckless disregard for Jane's health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

136.  By partnering with the Cascade Charter Township Fire Department to facilitate its Exploring program, allowing the Post to act with actual or apparent authority granted by BSA, and maintaining significant control and oversight over the actions of the Post, the employees, volunteers, and agents of the Cascade Fire Department became the agents of Boy Scouts of America and Learning for Life. By and through these agents, BSA is vicariously liable for the grossly negligent actions described above, including but not limited to:

a.  Steven Drake sexually abusing, harassing, and molesting Jane;

b.  Clem Bell sexually abusing, harassing, and molesting Jane;

c.  Deputy Chief Shipley failing to report Jane's suspected abuse in response to complaints from firefighters beginning in June 2016;

d.  Chief Sigg failing to report Jane's suspected abuse in response to complaints from firefighters beginning, at the latest, in November 2016;

e.  The failure of any fire department leadership to recognize the risk for abuse and the signs of abuse;

f.  The failure of any fire department leadership to investigate the complaints of suspected abuse;

g.  The failure of any fire department leadership to physically separate Bell from Jane when concerns about their relationship arose;

h.  The failure of any fire department leadership to impose escalating discipline when Bell repeatedly disregarded orders that he stay away from Jane; and

i.  The failures of policy, practice, and custom described in Paragraphs 121-123, *supra*.

25

137.    As a direct and proximate result of BSA's actions and/or inactions, Jane has suffered and will continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically-manifested injuries, including anxiety, depression, sleep disorders, and nightmares, physiological injuries, and physical injuries. Jane has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, will sustain a loss of earnings and earning capacity in the future, and will continue to incur ongoing medical expenses to obtain required treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT III

## NEGLIGENCE BY BSA

138.    Plaintiff incorporates by reference herein paragraphs 1-137 above.

139.    BSA owed Plaintiff the duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while she participated in the Exploring program.

140.    By accepting Jane in its youth educational program, BSA established a special relationship with Jane, resulting in BSA owing Jane a duty to use ordinary care for her safety and protection.

141.    Jane had a reasonable expectation that BSA would use ordinary care and skill in overseeing and implementing its Exploring program so that she could participate in the BSA program without being subjected to sexual assault, abuse, or molestation.

142.    Despite the known sexual abuse which has taken place in its Exploring program, BSA not only continued to accept students to participate in the program but also failed to

adequately supervise or oversee its various posts, including the Cascade Township Post. BSA's failure to adequately oversee its Exploring program and enforce its own policies and procedures was a breach of the duty to use ordinary care.

143.   Defendant BSA breached the duties it owed to Jane and was negligent by the actions described above, including but not limited to its failure to:

a.  Perform any meaningful oversight or supervision of the Cascade Charter Township Fire Department Post of its Exploring Program;

b.  Require and/or confirm that the adults directly involved with the Explorer students at the Cascade Fire Department Post were registered with BSA, had undergone a background check, and had completed Youth Protection Training;

c.  Require and/or confirm that the registered leaders of the Cascade Fire Department Post were overseeing the Exploring program;

d.  Require and/or confirm that the registered leaders of the Cascade Fire Department Post had completed Youth Protection Training every two years;

e.  Adequately train the Cascade Fire Department Post leadership as to the risks of child sexual abuse, harassment, and molestation inherent in its Exploring program;

f.  Adequately train the Cascade Fire Department Post leadership as to the signs that a child is, has been, or is at risk to be sexually abuse, harassed, or molested;

g.  Adequately train the Cascade Fire Department Post leadership as to appropriate reporting and investigation when it is suspected that a child has been sexually abused, harassed, or molested or when there is an elevated risk of such abuse, harassment, or molestation;

h.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that requires both male and female leaders to oversee co-ed events;

i.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that requires two-deep leadership at all times;

j.  Enforce and monitor the Cascade Fire Department Post for compliance with BSA's policy that prohibits adults from fraternization with Explorer students;

k.  Impose consequences on the Cascade Fire Department Post for its failure to comply with the BSA policies designed for the protection of the students involved in the Exploring program;

l.  Require that the Cascade Fire Department Post have its own policies in place to protect Explorer students from sexual harassment, abuse, or molestation;

m.  Require the Cascade Fire Department Post to adequately train its staff who are not registered leaders with the program regarding the prevention, reporting, and investigation of sexual assault, harassment, and molestation;

n.  Require the Cascade Fire Department Post to adequately train the Explorer students regarding the risk of sexual assault, harassment, and molestation;

o.  Adequately train and supervise its local councils and the employees and volunteers thereof regarding the required supervision of the Exploring Posts; and

p.  Make the Post aware of the egregious number of incidents and historically high risk of sexual abuse, harassment, and molestation in the Exploring program.

144.  By partnering with the Cascade Charter Township Fire Department to facilitate its Exploring program, allowing the Post to act with actual or apparent authority granted by BSA, and maintaining significant control and oversight over the actions of the Post, the employees, volunteers, and agents of the Cascade Fire Department became the agents of Boy Scouts of America and Learning for Life. By and through these agents, BSA is vicariously liable for the negligent actions described above, including but not limited to:

a.  Steven Drake sexually abusing, harassing, and molesting Jane;

b.  Clem Bell sexually abusing, harassing, and molesting Jane;

c.  Deputy Chief Shipley failing to report Jane's suspected abuse in response to complaints from firefighters beginning in June 2016;

d.  Chief Sigg failing to report Jane's suspected abuse in response to complaints from firefighters beginning, at the latest, in November 2016;

e.  The failure of any fire department leadership to recognize the risk for abuse and the signs of abuse;

f.  The failure of any fire department leadership to investigate the complaints of suspected abuse;

28

g.  The failure of any fire department leadership to physically separate Bell from Jane when concerns about their relationship arose;

h.  The failure of any fire department leadership to impose escalating discipline when Bell repeatedly disregarded orders that he stay away from Jane; and

i.  The failures of policy, practice, and custom described in Paragraphs 121-123, *supra*.

145.  As a direct and proximate result of BSA's actions and/or inactions, Jane has suffered and will continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically-manifested injuries, including anxiety, depression, sleep disorders, and nightmares, physiological injuries, and physical injuries. Jane has been prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, will sustain a loss of earnings and earning capacity in the future, and will continue to incur ongoing medical expenses to obtain required treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

WHEREFORE Plaintiff requests that this honorable Court enter a judgment on her behalf against Defendants awarding damages to Plaintiff which a jury determines to be fair and reasonable to compensate her for these injuries described above, along with damages, including costs, interest, and reasonable attorney fees incurred and all other appropriate relief.

GRUEL MILLS NIMS & PYLMAN PLLC

Dated:  August 31, 2018                     By: /s/   William M. Azkoul
                                                 William M. Azkoul (P40071)
                                                 Thomas R. Behm (P40073)
                                                 Laura B. Danielson (P77789)
                                                 Attorneys for Plaintiff
                                                 99 Monroe Avenue NW, Suite 800
                                                 Grand Rapids, MI 49503
                                                 (616) 235-5500
                                                 Email: wmazkoul@gmnp.com

## JURY DEMAND

NOW COMES Plaintiff, Jane Doe, by and through her attorneys, Gruel Mills Nims & Pylman, PLLC, and hereby demands a trial by jury in the above cause.

GRUEL MILLS NIMS & PYLMAN PLLC

Dated:  August 31, 2018                     By: /s/   William M. Azkoul
                                                 William M. Azkoul (P40071)
                                                 Thomas R. Behm (P40073)
                                                 Laura B. Danielson (P77789)
                                                 Attorneys for Plaintiff
                                                 99 Monroe Avenue NW, Suite 800
                                                 Grand Rapids, MI 49503
                                                 (616) 235-5500
                                                 Email: wmazkoul@gmnp.com